John J. Danks, Plaintiff-Appellee, v. Kropp Steel Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 11,209.

Second District, First Division.
April 17, 1959.
Released for publication May 5, 1959.

Norville & Dent, and Miller, Thomas, Hickey & Collins, of Rockford, for appellant.

Foster A. Smith, of Loves Park, for plaintiff-appellee.

JUSTICE DOVE delivered the opinion of the court.

In November 1952 the plaintiff, a construction engineer, was employed by defendant as an estimator and salesman. Although, at the time of his employment, nothing was said to plaintiff about vacation pay or about reimbursement for transportation or for expenses incurred in the course of his duties the record discloses that the parties understood that it was the custom of the company to grant to its employees two weeks vacation each year with pay, and that monthly expense accounts would be submitted to the company, by its several employees, and they would be reimbursed by the company.

On June 28, 1957 the instant complaint was filed in the Circuit Court of Winnebago County by which the

plaintiff sought to recover from the defendant his expenses for the year 1953, aggregating $1322.71, together with two week's vacation pay, one in 1953, and another in 1954, and for four additional day's work in 1955, all amounting to $476 and in addition sought to recover $322.26 for traveling and entertainment expense for the month of July 1955. These several items aggregate $2120.97 and it was for this sum plaintiff demanded judgment.

The defendant's amended answer admitted plaintiff's employment, date of employment, salary rates and the termination of plaintiff's employment as alleged. Defendant denied that it was indebted to plaintiff in any sum and averred that on September 22, 1955 it had sent to plaintiff its check dated September 10, 1955 for $322.26 in full payment for all services and salaries due the plaintiff and in full satisfaction of any and all disputes between plaintiff and defendant and had repeatedly assured plaintiff that it would honor this check if presented for payment. It was then averred that plaintiff had retained said check but had refused to present said check for payment and the pleader concluded that "said check was accepted by plaintiff in full accord, satisfaction and payment of the alleged claims stated in plaintiff's complaint," and bars and precludes plaintiff from any recovery herein.

By plaintiff's reply he admitted that defendant forwarded to him its check in the sum of $322.26 but denied that he accepted or retained it in satisfaction of his claims against the defendant and that he promptly so advised defendant; that said check was one of a series of checks which was forwarded to him by the defendant in September, 1955; that defendant sought, by the endorsement on the reverse side of said check, to obtain from plaintiff a release of the amounts rightfully due him from defendant and for that reason he refused to endorse or negotiate it; that the amount of

said check, $322.26, was the amount due him for traveling and entertainment expenses for the month of July, 1955 and that he advised defendant that if the endorsement on said check was removed from the reverse side thereof or a new check issued to him he would accept it in full for his traveling and entertainment expenses for the month of July, 1955 but not for any other purpose.

The issues made by the pleadings were submitted to the court for determination resulting in a finding and judgment in favor of the plaintiff for $1322.71 and defendant appeals.

The record discloses that plaintiff went to work for defendant under an oral arrangement on November 11, 1952 at a salary of $125 per week which was afterwards increased to $200 per week. He continued in this employment until August 1955. His office adjoined the drafting room in the company's plant at Rockford. His duties required him to contact customers and in so doing he was frequently absent from his office and used his own car for transportation with the knowledge, consent and approval of the defendant.

It further appears that the defendant had a rule which required all expense accounts to be turned in by all employees within ten days after the close of the month in which the expense was incurred; that all employees did so except the plaintiff and that the first time plaintiff turned in any expense account was in February 1954. Charles Heffs, comptroller of the defendant, testified that he knew plaintiff was doing some traveling for the company and several times during 1953 requested plaintiff to turn in his expense account but he did not do so; that on or about August 10, 1954 he again asked him to get in his expense accounts and inquired of him whether he, Danks, had any expense for 1953 to which Danks replied that it was small and "he would forget it." The expense accounts sub-

mitted by plaintiff for the months of September and October 1954 and for the months of March, April and May 1955 were paid as indicated by a letter dated September 1, 1955 from Mr. Heffs, who wrote the plaintiff:

"Dear John: Enclosed are checks which represent reimbursement of your traveling and entertainment expenses as follows:

| Check Number | Period | | Amount |
|---|---|---|---|
| 7903 | September | 1954 | $ 136.41 |
| 7904 | October | 1954 | 364.50 |
| 7905 | March | 1955 | 428.71 |
| 7906 | April | 1955 | 378.19 |
| 7907 | May | 1955 | 513.85 |
| | | | $1821.66 |

"Your final expense statement submitted for the month of July 1955 has been approved for payment and will be forwarded to you soon."

On September 22, 1951 Mr. Heffs again wrote plaintiff:

"Dear John: Enclosed is our check for the amount of $322.26 which represents reimbursement of your travelling and entertainment expenses for the month of July, 1955 and also represents final reimbursement of expenses due you."

The check enclosed is dated September 10, 1955 and is for the sum indicated and is payable to the order of the plaintiff. On the reverse side of this check appears these typewritten words: "Endorsement indicate acceptance of this check as final for all services, salaries and expenses due me from Kropp Steel Company." Attached to this check is a voucher with the request that it be detached before depositing and under the word "description" in this voucher are the words "expenses for July, 1955." Plaintiff received this letter

256

and check but has never presented the check for payment because he would not subscribe to the endorsement thereon. Upon the trial this check was produced by the plaintiff and offered and admitted in evidence and apparently the original check and voucher are a part of the record in this case.

The plaintiff testified that as early as April 1953 he was requested by the general manager or by one of the superior officers of the company to send in his expense account each month but he did not do so; that he never made any request of any of the officers of the company for expenses during 1953 or at any time while he was an employee of the company and that it was on January 28, 1957, when he first submitted his expense account for 1953 to the company. According to the plaintiff's testimony there was nothing said by him to Mr. Heffs about forgetting or waiving the 1953 expense account; that what he, Danks, did say, upon the occasion testified to by Mr. Heffs was that he had been in the office the major part of the time while employed in 1952 and that he would waive the little expense he had incurred during that period; that it was the 1952 expense that he said he would waive or forget and not the expense incurred in 1953.

The plaintiff further testified that he kept a daily record or work sheet showing cash expended and mileage traveled by him in connection with his employment; that he subsequently transferred or copied these entries to sheets which he designated as a "weekly expense and call record." There were 43 of these sheets reflecting the date, name and address of the customer contacted, the purpose for which the call was made, the number of miles traveled and a charge of 8 cents per mile traveled, the cost of meals and some miscellaneous items beginning in April 1953 and concluding with the month of December 1953. These items as listed aggregate $1322.71. The plaintiff testified that the original

257

record or work sheet which he made was destroyed by him at the time he copied the items upon the several sheets which were marked as an exhibit and offered and admitted in evidence upon this trial over the objection of appellant upon the ground it was not an account of original entry, it appearing that some of the data was transferred from the original entry book or sheet at various times, some at a period as late as one year after the original records were made.

Counsel for appellant insists that the plaintiff, by failing to submit his expense account in accordance with the rules of his employer for such a long period after the expenses were incurred, waived and forfeited any right to reimbursement; that the submission by the defendant to the plaintiff of the check for $322.26 on September 22, 1955 was an account rendered, and plaintiff's retention of it for an unreasonable length of time, constitutes an accord and satisfaction and bars plaintiff's recovery; that the judgment is against the manifest weight of the evidence and that no proper foundation was laid for the admission into evidence of plaintiff's account and its admission was error.

Counsel for appellee state that this is a simple claim for reimbursement of moneys which plaintiff expended in defendant's business during 1953; that there has never been an account stated between the parties to this proceeding which would bar this action and that there has been no accord and satisfaction of this claim. Counsel argue that although the entries making up this account were copied by plaintiff from slips of paper upon which the original entries were made by him that fact, does not render the record of the account which plaintiff offered in evidence incompetent. Counsel for appellee admit that plaintiff was slow in submitting his expense accounts to the defendant but counsel excuse him by stating that "it was because he was so meticulous." Counsel argue that inasmuch as defendant paid

plaintiff his 1954 and 1955 expenses on the basis of plaintiff's account kept in the same manner as his 1953 account, defendant is in no position to object to the exhibit which sets forth the several items of expense upon which this judgment is based.

■ As a general proposition the retention by a creditor, for an unreasonable period of time, of a check tendered in full payment of an unliquidated or a disputed claim, without cashing or otherwise using it and without indicating a refusal to accept the check as an accord and satisfaction, constitutes an acceptance of the check as payment or settlement of the claim so as to bar any recovery of any balance claimed by the creditor. (Editorial Summary 13 A.L.R.2d 737–738.) Counsel for plaintiff suggests that appellee's claim for his expenses for 1953 was not an unliquidated or disputed claim and calls our attention to the fact that plaintiff made no claim for his 1953 expenses until January 1957 which was long after his receipt of the check for $322.26 dated September 10, 1955. In the sense that this claim had not been discharged or paid it was unliquidated. It can only be asserted that it was undisputed because defendant did not know of its existence.

The comptroller of defendant company knew when the check for $322.26 was issued on September 10, 1955 that the payee of that check had not submitted any expense account for 1953. If the comptroller of defendant believed what he testified to, that plaintiff had told him in 1954 that the expense plaintiff incurred for that year was small and should be forgotten he was justified in assuming, when he received plaintiff's expense account for July 1955, that it was his final expense account. He did that very thing and on September 1, 1955 he wrote plaintiff: "Your final expense statement submitted for the month of July, 1955, has been approved, for payment and will be forwarded to you soon."

259

Plaintiff testified that he received that letter. Good faith and fair dealing required that he should then speak. His connection with defendant had terminated at that time. If the company was indebted to him in any sum he should have communicated that fact to his former employer. He did not do so. The comptroller did what he had written that he would do and on September 10, 1955 wrote plaintiff enclosing defendant's check for $322.26. Plaintiff testified that he received this letter and check about September 22, 1955. The letter stated that the check was for "reimbursement of traveling and entertainment expenses for the month of July, 1955 and represents final reimbursement of expenses due you." The check itself reveals that it was submitted to plaintiff in final payment for his services, salaries and expenses due him from the company. Plaintiff retained that check. He never tendered it back to the defendant nor did he ever offer to return it. He did not cash it because of the legend appearing thereon but retained it and it was offered in evidence upon the trial of this case.

Curran v. Bray Wood Heel Co., 116 Vt. 21, 68 A.2d 712, also reported in 13 A.L.R.2d 728 preceding the annotation herein referred to, was an action brought to recover a balance allegedly due for lumber and the trucking of the same under an oral contract. It appeared that on July 29, 1946, defendant wrote the plaintiff and enclosed its check for $118.87 which defendant stated was the amount due plaintiff according to its records. To the check a stub had been attached by the defendant upon which appeared "By endorsement this check is accepted in full payment of the following account: Final Settlement as per letter 7/29/46." According to the testimony of the plaintiff, he took the check to defendant's office shortly after he received it and informed the defendant that the statement he had received was not complete; that it didn't

include all the items; that the check was not correct and that he would not cash it with the words "final settlement as per letter" written on it. It appeared, however, that the plaintiff retained the check and sixteen months later brought suit. In holding that plaintiff could not recover the court stated that altho the plaintiff advised defendant that he would not cash the check, he made no offer to return it and under those circumstances the court held that there was an unreasonable retention of the check which resulted in an accord and satisfaction of plaintiff's claim.

In the course of its opinion the Supreme Court of Vermont cited and quoted from Canton Union Coal Co. v. Parlin & Orendorff Co., 215 Ill. 244, 74 N. E. 143, 145, 106 Am. St. Rep. 162 where our court said: (p. 249) "If the plaintiff was not willing to accept the check as sent, in full of the account and acknowledge the receipt of it as requested, it ought to have returned it. The rule that required it to do so is neither harsh nor unjust, but it secured to the defendant the right to have its check received as offered, if received at all, unless there was a subsequent waiver of that condition."

Seidman v. Chicago Eye Shield Co., 267 Ill. App. 77 was an action by an accounting firm to recover a balance it claimed to be due on a written and a subsequent oral agreement entered into by plaintiffs and defendants. It appeared that under the agreements defendants had paid $1750 and subsequently sent plaintiffs a check for $750, in a letter in which the defendant said: "We are enclosing herewith our check in the amount of $750 which balances our account as per our contract with you." Plaintiffs answered this letter acknowledging the receipt of the $750 stating that their fee for all the services rendered was $7500; that they would apply the check for $750 upon the account and take further action for the recovery of the balance. The plaintiffs never cashed the check nor did they return it to the defend-

ants but it was offered in evidence upon the trial which resulted in an instructed verdict for the defendants. In affirming the judgment rendered upon that verdict the court said: (pp. 83, 84, 85) "It appears sufficiently from the record in this proceeding that the controversy between these parties was one fairly in dispute and that plaintiff's claim could not be treated as liquidated. The accepted rule applicable to such claims is that where a debtor offers to settle and compromise the debt by sending to the creditor a check in the amount of such offer and compromise it becomes the duty of the creditor either to accept the check or reject it, and he has no right to cash the check and thereby obtain the benefit of such offer without its accompanying burden of compromise (citations omitted). This case goes one step further, however. Plaintiffs refused to accept the check in full settlement of the account, but protested the same and after stating that they would apply the check against defendant's account and take further action for the recovery of the balance, they nevertheless held the check continuously until the trial of the cause—If the proposed settlement and payment of the account tendered is not satisfactory to him, it is the creditor's duty immediately to repudiate the offer and return the check. To hold the check indefinitely, after notifying defendants that they would cash it, is not consistent with a repudiation of the offer of compromise, for as stated in Day-Luellwitz Lumber Co. v. Serrell, 177 Ill. App. 30, a check or draft is not intended for indefinite circulation or hoarding. It is supposed to be negotiated promptly or presented promptly and 'if he is not willing to take the lesser sum in full, he must return the check without using it. This seems to be the law of Illinois as declared by the Supreme Court.' "

In 1 Am. Jur. Accord and Satisfaction, Par. 29, p. 230, it is said: "Where a creditor receives a check con-

taining the words 'final settlement' or others of similar import, it is his duty to repudiate the offer and return the check or money remitted within a reasonable time after it is received if he does not care to receive it in full discharge of the indebtedness. The retention of the check for an unreasonable length of time without offering to return it has been held to constitute full satisfaction for the demand it purports to cover."

Plaintiff's claim that defendant is now indebted to him for expense incurred in 1953 is not consistent with either his conduct or speech. When the comptroller of defendant asked the plaintiff in 1954 about his expense account for 1953 had there been any such sum as $1322.71 due him for expenses for the preceding year and his books so disclosed, it is only reasonable to conclude that he would have so indicated. Plaintiff testified that he did have a conversation with the comptroller in 1954 about his 1953 expense but he does not testify as to anything that was said except that he said his 1952 expense was so small that he waived it.

Under the facts as disclosed by this record, it was the duty of plaintiff to present his expense account within a reasonable time after the close of each month. It was certainly his duty when he received the check of September 10, 1955 for $322.26, to return it or offer to return it within a reasonable time thereafter if he was not satisfied with it. He did not do so. His connection with the company had ceased on July 31, 1955. He testified that he never turned in his expense account for 1953 until January 28, 1957 and the instant action was filed on June 28, 1957. The trial was had in March, 1958, and this check was produced by the plaintiff and admitted in evidence and is a part of the record in this case, and upon request may be withdrawn and delivered to the plaintiff.

■ The letter of defendant and the accompanying check for $322.26 could only have been interpreted by

263

plaintiff as a statement of the amount which defendant insisted was finally due plaintiff. No objection was made either to the contents of the letter or to the check. Their retention by the plaintiff under the facts disclosed by this record, constituted an accord and satisfaction as a matter of law and the trial court erred in not so finding. In view of this conclusion no other matters need be considered.

The judgment appealed from is reversed.

Judgment reversed.

SPIVEY, P. J. and McNEAL, J., concur.